# UNITED STATES DISTRICT COURT
### for the
### Southern District of California



FILED

MAR 0 6 2018

CLERK, U.S. DISTRICT CC.
SOUTHERN DISTRICT OF CALIF
BY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.   **18MJ1042**
One Samsung Galaxy S6 phone, )
IMEI: 990004843928213 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-1, incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960, and 963 | Importation of and Conspiracy to Import Cocaine |

The application is based on these facts:

See attached affidavit of HSI Special Agent Kevin M. Day, incorporated herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Kevin M. Day, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **3-6-18**

*Judge's signature*

City and state: San Diego, CA     Hon. Nita L. Stormes, Magistrate Judge
*Printed name and title*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>(1) One Samsung Galaxy S6 phone, IMEI: 990004843928213; and<br><br>(2) One Apple IPhone 6S phone, IMEI: 359157071621366. | **AFFIDAVIT OF SPECIAL AGENT KEVIN DAY IN SUPPORT OF SEARCH WARRANT** |

I, Special Agent Kevin M. Day, having been duly sworn, declare and state as follows:

## I

## INTRODUCTION

1. I make this affidavit in support of an application for a warrant to search (1) a Samsung Galaxy S6 phone, IMEI: 990004843928213 ("Target Device Number 1") and (2) an Apple IPhone 6S phone, IMEI: 359157071621366 ("Target Device Number 2") (collectively, the "Target Devices"), and seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960, and 963 Unlawful Importation of a Controlled Substance and Conspiracy to Unlawfully Import a Controlled Substance (the "Target Offenses").

2. The Target Devices were seized from Defendant Isaac Espino ("Defendant") at the time of his arrest for Importation of Cocaine on January 25, 2018 at the Otay Mesa,

California Port of Entry. The Target Devices are currently in the possession of Homeland Security Investigations as evidence in the evidence vault located at 880 Front Street, Suite 3300, San Diego, CA.

3. This search of the Target Devices supports an investigation and prosecution of Defendant for the Target Offenses. Based on the information below, there is probable cause to believe that a search of the Target Devices, as described in Attachments A-1 and A-2, will produce evidence of the Target Offenses, as described in Attachments B-1 and B-2.

4. The following is based upon my experience and training, investigation, and consultation with other law enforcement agents and officers experienced in narcotics violations, including the Target Offenses. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because I make this affidavit for the limited purpose of obtaining a search warrant for the Target Devices, it does not contain all of the information known by me or other federal agents regarding this investigation, but only sets forth those facts believed to be necessary to establish probable cause. Dates and times are approximate, and refer to Pacific Standard Time (PST) unless otherwise specified.

## II
## AFFIANT'S EXPERIENCE AND TRAINING

5. I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I am also a federal law enforcement officer within the meaning of Rule 41(a)(2)(C) of the Federal rules of Criminal Procedure. I am authorized under Rule 41(a) to make applications for search and seizure warrants and to serve arrest warrants. I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

6. I am a Special Agent ("SA"), with the United States Department of Homeland Security ("DHS"), United States Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"). I have been employed by HSI as a Special Agent since February 2016.

7. I am assigned to a narcotics investigation group. I have conducted criminal investigations of or relating to narcotics smuggling and other crimes. I have received basic training in conducting narcotics smuggling investigations and the enforcement of numerous Immigration and Customs laws within the United States. My training has also included the use of cellular and digital telephones and other electronic devices used by narcotics smugglers in the normal course of their illicit activities.

8. I have completed all course work in the Masters of Forensic Science with an Area of Specialization in Criminal Investigation program at National University in San Diego, California. I obtained a Bachelor of Science Degree in Criminal Justice from State University of New York The College of Brockport, in Brockport, New York.

9. I graduated the twelve-week Criminal Investigator Training Program ("CITP") and the fifteen-week Homeland Security Investigations Special Agent Training Program ("HSISAT") at the Federal Law Enforcement Training Center in Glynco, Georgia.

10. Prior to my employment with HSI, I was employed as a federal agent with the United States Border Patrol ("USBP") since January 2003. I graduated from the twenty-week USBP Basic Border Patrol Training Academy at the Federal Law Enforcement Training Center in Glynco, Georgia.

11. I am cross-designated by the United States Drug Enforcement Administration to conduct narcotics investigations and enforce the provisions of the Federal Controlled Substances Act, pursuant to Title 21, United States Code.

12. My training and experience in narcotics enforcement has included narcotics interdiction, the identification of different types of narcotics, including cocaine, and the investigation of persons in possession of narcotics for purposes of sales and transportation. In addition, I speak regularly with narcotics investigators at the federal,

state and local level regarding the manner in which sellers of narcotics store, transport and sell narcotics.

13. I have participated in many aspects of criminal investigations including the issuance of subpoenas, reviewing evidence, conducting physical and electronic surveillance, working with informants, and the execution of search and arrest warrants.

14. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distributional quantities of hard narcotics, such as cocaine, heroin, and methamphetamine. Typically, load drivers smuggling narcotics across the border from Mexico into the United States are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substances. Narcotics smugglers and their organizations use cellular/mobile telephones, in part, because these individuals believe law enforcement is unable to track the phone numbers of calls placed to and from cellular/mobile telephones.

15. Based upon my training and experience, my participation in the investigation of narcotic organizations, and consultations with law enforcement officers experienced with narcotic trafficking investigations, and all the facts and opinions set forth in this Affidavit, I submit the following:

    a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, email, Internet, social networking websites, and voice messages.

    b. Drug smugglers believe that cellular telephones provide greater insulation and protection against court-ordered wiretaps, and they believe in the inability of law enforcement personnel to simultaneously track the originating and destination telephone numbers of calls placed to and from their cellular telephone.

1         c.     Drug smugglers will use cellular telephones because they are able to monitor the progress of their illegal cargo while the conveyance is in transit.

        d.     Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations to facilitate the further distribution of their illegal cargo within the United States.

        e.     Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

        f.     Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity, including the presence and location of marked and unmarked units, as well as the operational status of Border Patrol checkpoints or Ports of Entry within the United States.

        g.     Conspiracies involving narcotics smuggling often generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messages, and phone numbers of co-conspirators.

16.     Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

17.     Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I have learned that cellular/mobile telephones often contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This

5

information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, based upon my training and education, searches of cellular/mobile telephones associated with narcotics smuggling investigations may yield evidence:

    a.    tending to identify attempts to import cocaine or some other federally controlled substances from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the importation of cocaine, or some other federally controlled substances from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in the importation of cocaine, or some other federally controlled substances from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the importation of cocaine, or some other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, cellular/mobile telephone(s); and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

### III

### STATEMENT OF PROBABLE CAUSE

18. On January 25, 2018, at approximately 2:34 a.m., Defendant applied for entry to the United States at the Otay Mesa, California Port of Entry. Defendant was the driver, sole occupant, and registered owner of a 2002 Honda Civic (the "vehicle").

19. U.S. Customs and Border Protection Officer ("CBPO") Salgado was working the primary inspection booth during this time. Defendant presented his U.S. Passport to

CBPO Salgado and told CBPO Salgado that he was in Mexico visiting family and was now returning to work in Miramar, CA. Upon querying Defendant's information, CBPO Salgado received a computer-generated alert and referred Defendant to secondary inspection.

20. In the secondary inspection area, CBPO Truong and his Human Detection Narcotic Detector Dog Passenger Processing ("HD/NDD-PP") screened Defendant's vehicle. CBPO Truong's HD/NDD-PP alerted and responded to the speaker box inside the trunk of the vehicle.

21. The vehicle was then referred to the Z-Portal for further inspection. The x-ray revealed anomalies in the speaker box inside the trunk of the vehicle.

22. CBPO Jung performed a physical inspection of the vehicle and discovered packages inside the speaker box. A random package was probed and CBPO Jung extracted a white powder substance, which tested positive for Cocaine. CBPO Jung removed a total of 17 packages with a net weight of 17.78 kilograms (39.12 lbs) from the speaker box.

23. The Target Devices were discovered and seized by CBP at the time of Defendant's arrest. HSI then assumed custody of the Target Devices.

24. After Defendant's arrest, I advised him of his *Miranda* rights. Defendant stated he understood his rights and agreed to speak with me and Special Agent Burgoin. During a video recorded interview, Defendant admitted he knew there were drugs concealed inside the vehicle. He stated he was going to be paid $1500.00 USD for smuggling the drugs from Mexico to the United States.

25. In particular, Defendant stated, that he had been put in touch with a man in Mexico called "El Negro" who had paid him to drive vehicles south from the United States into Mexico. "El Negro" later asked Defendant if he would be interested in smuggling marijuana into the United States from Mexico. Once Defendant agreed, "El Negro" put him in contact with drug smugglers to arrange the crossing.

26. On the date of the instant offense, Defendant was supposed to call phone number (664) 355-6521 after he successfully crossed into the United States. Prior to

crossing, Defendant was instructed to get a room at a hotel in Chula Vista, California, and he was given $420.00 U.S. currency by the smugglers for the hotel room and incidentals. After Defendant was arrested, I noticed that Defendant had several missed calls from phone number (664) 355-6521. Although I cannot remember which of the Target Devices displayed the missed calls, the missed calls came from phone number (664) 355-6521.

27. Based on my experience investigating narcotics smugglers, Defendant may have used the Target Devices to coordinate with his co-conspirators regarding the importation and delivery of the cocaine, and to otherwise further this conspiracy both inside and outside the United States. I believe that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, email messages, messages and posts from social networking sites, pictures, and other digital information may be stored in the memory of a cellular telephone and may identify other persons involved in narcotics trafficking activities.

28. Based on my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of Defendant and his co-conspirators, such as recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, email messages, messages and posts from social networking sites, pictures, and other digital information may be stored in the memory of the Target Devices.

29. Drug trafficking conspiracies require intricate planning and coordination to successfully evade detection by law enforcement. In my professional training, education and experience, I have learned that this requires planning and coordination in the days, weeks, and often months prior to the event. Given this, I request permission to search the Target Devices for items listed in Attachments B-1 and B-2 beginning on December 1, 2017, up to and including January 25, 2018.

//

# III

# METHODOLOGY

30. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

31. Following the issuance of this warrant, I will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the Target Devices and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

32. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual

9

review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## IV

## CONCLUSION

33. Based on all of the facts and circumstances described above, there is probable cause to conclude that Defendant used the Target Devices to facilitate violations of Title 21, United States Code, Section(s) 952, 960, and 963.

34. Because the Target Devices were promptly seized during the investigation of Defendant's smuggling activities and have been securely stored, there is probable cause to believe that evidence of illegal activities committed by Defendant continues to exist on the Target Devices. As stated above, I believe that the date range for this search is from December 1, 2017 through January 25, 2018.

35. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A-1 and A-2, and the seizure of items listed in Attachment B-1 and B-2, using the methodology described above.

I declare under penalty of perjury that the foregoing is true and correct.

Kevin M. Day
Special Agent
Homeland Security Investigations

Sworn to and subscribed before me this \_\_6\_\_ day of March, 2018.

HONORABLE NITA L. STORMES
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A-1**

### PROPERTY TO BE SEARCHED

The property to be searched in connection with an investigation of violation of Title 21, United States Code, Sections 952, 960, and 963 is a Samsung Galaxy S6 phone, IMEI: 990004843928213 ("Target Device 1").

Target Device 1 is currently in the possession of the Department of Homeland Security, Homeland Security Investigations as evidence in the evidence vault located at 880 Front Street, Suite 3300, San Diego, CA.

## **ATTACHMENT B-1**

Authorization to search the Target Device 1 described in Attachment A-1 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Device 1 for evidence described below. The seizure and search of the Target Device 1 shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats, and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of December 1, 2017 to January 25, 2018:

  a. tending to identify attempts to import cocaine or some other federally controlled substances from Mexico into the United States;

  b. tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the importation of cocaine, or some other federally controlled substances from Mexico into the United States;

  c. tending to identify co-conspirators, criminal associates, or others involved in the importation of cocaine, or some other federally controlled substances from Mexico into the United States;

  d. tending to identify travel to or presence at locations involved in the importation of cocaine, or some other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

  e. tending to identify the user of, or persons with control over or access to, Target Device 1; and/or

  f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.